SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Blvd., Suite 1
Las Vegas, NV  89146-5308
Telephone:     (702) 228-7590
Facsimile:      (702) 892-0122
Lenard E. Schwartzer, Esq.
bkfilings@s-mlaw.com
(Admitted Pro Hac Vice)

-- and --
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone: (516) 357-3000
Facsimile: (516) 357-3333
Stuart I. Gordon, Esq.
Matthew V. Spero, Esq.
Stuart.gordon@rivkin.com
Matthew.spero@rivkin.com
Co-Counsel to Russell Nype and
Revenue Plus LLC, Judgment Creditors

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Case No. 8-21-70611-REG |
| BARNET LOUIS LIBERMAN, | Chapter 7 |
| Debtor. | Adversary Proceeding No.: 21-8123-reg |
| RUSSELL NYPE and REVENUE PLUS, LLC, | **MOTION FOR: 1) RECONSIDERATION OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE: COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF CLAIM, OR, ALTERNATIVELY; 2) RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiffs, | |
| vs. | |
| BARNET LOUIS LIBERMAN | |
| Defendant. | Hearing Date:    January 24, 2022<br>Hearing Time:   9:30 a.m. |

RUSSEL NYPE and REVENUE PLUS, LLC, Plaintiffs (hereinafter collectively, "NYPE"), move for reconsideration of the MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF 21] (the "Memorandum") on the grounds that this Court made an error with regard to the validity of the $4,835,111.37 judgment against BARNET LOUIS LIBERMAN ("Liberman") and others issued by the District Court, Clark County, Nevada (the "District Court") in Case No. A-16-740689-B, based on the fraudulent conveyance scheme by Liberman and others to prevent Nype from collecting the debt owed to him by Las Vegas Land Partners, LLC ("LVLP") pursuant to Bankruptcy Code §523(a)(2)(A). The additional exhibits[1] filed with this motion show that: (a) SHELLEY D. KROHN, the Chapter 7 Trustee in the bankruptcy case of LVLP (the "Trustee") was the co-plaintiff with Nype in the District Court, (b) Nype and the Trustee had previously agreed that any monies collected from the defendants in that case would be divided equally between Nype and the Trustee, and (c) the automatic stay did not enjoin: (i) litigation by the Trustee to collect a fraudulent conveyance against Liberman; (ii) litigation to determine that certain non-debtors are the alter egos of LVLP; or (iii) conspiracy claims by Nype against non-debtor defendants.

In addition, with regard to standing, Nype requests the Court to consider that: (a) Nype and the Trustee previously agreed to divide any collections from Liberman on any of the claims asserted in the State Court Litigation equally; and (b) the Trustee has agreed to become a plaintiff in this adversary proceeding to eliminate any issue concerning standing to assert the non-dischargeability of the fraudulent transfer claim.

---

[1] All such documents were filed in the LVLP Bankruptcy Case or in the Collection Litigation.

Finally, with regard to the adequacy of the Findings for purposes of Bankruptcy Code §523(a)(2), if the Court considers reconsideration inappropriate, then Nype respectfully requests that this motion should be considered as a new Motion For Partial Summary Judgment Re: Complaint For Determination Of Dischargeability Of Judgment Debt.

## RECONSIDERATION

In the Memorandum, this Court held: "The Plaintiffs' motion for partial summary judgment is denied without prejudice" and in Footnote 5 thereof stated: "Assuming Plaintiffs are able to supplement the record or otherwise get past the [automatic stay] issue raised here, the Court has concerns with Nype's standing to assert a claim against the Debtor based on the Fraudulent Conveyance Award. … the Court has concerns with the Nevada Judgment's failure to make any specific findings as to the Debtor's individual actions and the Debtor's individual intent to defraud…" This Motion seeks to supplement the record concerning these issues.

Federal Rule of Civil Procedure 59 permits a party to seek to alter or amend an order. It recognizes the notion that mistakes happen and that important matters, including controlling law or fact, may be overlooked. In this case, this Court relied on the alleged invalidity of the Judgment entered by the Nevada State Court, which was not raised by Liberman and which Nype did not have an opportunity to reply to.

## VALIDITY OF NEVADA STATE COURT JUDGMENT

In the Memorandum, this Court cited the case of *Koeberer v. California Bank of Commerce et al. (In re Koeberer)*, BAP No. NC-21-1078-FBS, Bk. No. 20-110514, 2021 WL 5371142 at *5-6 (B.A.P. 9th Cir. Nov. 18, 2021) (citing *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992)), and held that there was insufficient evidence to find that the Judgment was valid and enforceable and entitled to preclusive effect because there was no order lifting the automatic stay in the LVLP bankruptcy case to allow the Collection Action to proceed. This argument was not made by Liberman and therefore Nype did not have an opportunity to respond.

The *Koeberer* case is distinguishable.  In *Koeberer,* the trustee was NOT a party to the litigation. In *Koeberer,* a **creditor** continued to prosecute a fraudulent conveyance action against non-debtors.  *Koeberer* is correct in holding that the prosecution by a creditor of a fraudulent conveyance claim belonging to the bankruptcy estate would violate the automatic stay.[2] *Koeberer* does **not** hold that prosecution of a fraudulent conveyance claim by a **trustee** would violate the automatic stay because it wouldn't.[3] The pleadings in the Nevada Bankruptcy Court and in the Collection Litigation show that: (a) the Bankruptcy Court was aware of the fraudulent transfer claims belonging to the LVLP Bankruptcy Estate and authorized the employment of Special Counsel to pursue them on behalf of the Trustee, and (b) the State Court was aware that the Trustee was intervening in the

---

[2] Nype agrees that the fraudulent conveyance claim is property of the LVLP bankruptcy estate.

[3] Plaintiffs don't dispute the holding in *Colonial Realty* that an action to recover a fraudulent conveyance is an "action ... to recover a claim against the debtor" within the meaning of § 362(a)(1).

Collection Litigation to pursue the fraudulent transfer claims belonging to the LVLP Bankruptcy Estate. The Judgment, previously attached as Exhibit "A" to the MOTION PARTIAL SUMMARY JUDGMENT RE COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF JUDGMENT DEBT, states the following:

> 2.    Plaintiff Trustee was duly appointed to act as the Trustee in the Bankruptcy Case of Las Vegas Land Partners, LLC, Case No. BK-19-15333-mkn and moved to intervene in the instant action, which motion was granted on November 18, 2019. Plaintiff Trustee filed the complaint in intervention on November 18, 2019.

Based on the docket in the Collection Litigation, it cannot be disputed that it was only after the Trustee intervened in the Collection Litigation that the matter proceeded to trial.

The additional documentation provided to this Court are the following pleadings filed with these courts:

Nevada Bankruptcy Court documents:

1. Application to Employ John W. Muije & Associates as Special Counsel on a Contingent Fee Basis Under 11 U.S.C. §327(a) [ECF 28] as Exhibit "A". ("Muije Employment Application")
2. Declaration of John Muije [ECF 29] as Exhibit "B".
3. Declaration of Shelley D. Krohn, Trustee [ECF 30] as Exhibit "C". ("Trustee Employment Declaration")
4. Order Granting Application to Employ John W. Muije & Associates as Special Counsel on a Contingent Fee Basis Under 11 U.S.C. §327(a) [ECF 35] as Exhibit "D". ("Muije Employment Order")

5. First Interim Fee Application Of John W. Muije & Associates For Allowance of Compensation for Services Rendered As Special Litigation Counsel During Period From November 1, 2019 Through April 30, 2020 And For Reimbursement Of Expenses Pursuant To 11 U.S.C. §§330 And 331 And Federal Rule of Bankruptcy Procedure 2016 [ECF 63] as Exhibit "E". ("Muije Fee Application").

6. Order Granting First Interim Fee Application Of John W. Muije & Associates For Allowance of Compensation for Services Rendered As Special Litigation Counsel During Period From November 1, 2019 Through April 30, 2020 And For Reimbursement Of Expenses Pursuant To 11 U.S.C. §§330 And 331 And Federal Rule of Bankruptcy Procedure 2016 [ECF 76] as Exhibit "F". ("Muije Fee Order").

State Court documents from the Collection Litigation:

7. Shelley D. Krohn, Trustee's Motion to Intervene as Exhibit "G".
8. Mitchell Defendants' Opposition to Shelley D. Krohn, Trustee's Motion to Intervene as Exhibit "H".
9. Order Granting Trustee's Motion to Intervene as Exhibit "I".
10. Complaint in Intervention as Exhibit "J".

These documents show that both the Bankruptcy Court and the State Court authorized John Muije to pursue, **on behalf of the LVLP Bankruptcy Estate** as well as Nype, the fraudulent conveyance claims previously filed by Nype.

The caption of the Complaint in Intervention includes: "Shelley D. Krohn, U.S. Bankruptcy Trustee" as a "Proposed Plaintiff In Intervention".

While the caption on the Judgment does not include that language, it is clear from the record and the language in the Judgment that the State Court was treating the LVLP Trustee as a plaintiff. An error in the caption of the Judgment should not make it invalid. See, *Moses v. Citicorp Mortg., Inc.*, 982 F. Supp. 897, 898 (E.D.N.Y. 1997).

> Rule 10(a) requires all parties to be listed in the caption of the complaint, Fed. R. Civ. P. 10(a), but errors in captions are common and need not "be viewed as [ ] fatal defect[s]," 5A Wright & Miller, Federal Practice & Procedure § 1321 (3d ed. 2004 & Supp. 2017); ... *Marsh v. Butler Cty.*, 268 F.3d 1014, 1023 n.4 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("[T]he caption of the complaint is not part of the statement of the claim under Rule 8. The caption is something apart, being mandated by a different rule: Fed. R. Civ. P. 10. The caption is chiefly for a court's administrative convenience.").

*Hawkins v. Washington Metro. Area Transit Auth.,* 311 F. Supp. 3d 94, 101 (D.D.C. 2018). The failure of the Clark County (Nevada) District Court[4] to include the Trustee in the caption of the Judgment does not change the fact that the Trustee was a co-plaintiff and the Trustee, authorized both by the Bankruptcy Court and the State Court, had pursued the fraudulent transfer claims. The fact that the Trustee is referred to as the "Trustee Plaintiff" in the Judgment confirms that fact.

There is no jurisdictional defect preventing the State Court from hearing the fraudulent transfer claim by the Trustee because jurisdiction over fraudulent conveyance actions is granted concurrently to the bankruptcy courts and the state courts, *In re Glenn*, 359 B.R. 200, 203

---

[4] The Judgment was prepared by Judge Gonzales' Chambers or a member of her staff.

(Bankr. N.D. Ill. 2006); *In re Rosenblum*, 545 B.R. 846, 854 (Bankr. E.D. Pa. 2016) ("the state court also has concurrent jurisdiction to resolve such [state fraudulent transfer] claims."); *In re Farmer*, 567 B.R. 895, 901 (Bankr. W.D. Wash. 2017) ("A bankruptcy court has concurrent but not exclusive jurisdiction over a chapter 7 trustee's claim to avoid a fraudulent transfer under state law using the strong-arm power of section 544(b).").

For these reasons, this Court should find (a) there was no violation of the automatic stay by the prosecution and entry of the Judgment in the Collection Litigation; and (b) it is bound to give preclusive effect to the Judgment.[5]

## STANDING

This Court, without deciding, raised the issue of whether Nype had standing to object to the dischargeability of the portion of the Judgment based on fraudulent conveyances.[6] This issue was not raised by Liberman and therefore Nype did not have the opportunity to reply.

The Judgment awarded damages for fraudulent conveyances "in favor of Plaintiffs". There are multiple plaintiffs in the Collection Litigation - Russell Nype, Revenue Plus, and the Trustee. The award in the Judgment does not differentiate among them. For that reason, Nype and the Trustee would have standing to enforce the Judgment.

Second, Nype and the Trustee agreed that any collection of the Judgment from any of the defendants would be divided equally. The Court

---

[5] If this Court still determines that the Judgment is not valid because it violated the automatic stay in the LVLP Bankruptcy Case, Nype will file a Motion to Lift Stay in the Liberman Bankruptcy Case for permission to file a Motion to Annul The Automatic Stay in the LVLP Bankruptcy Case.

[6] The Memorandum stated: "the Court has concerns with Nype's standing to assert a claim against the Debtor based on the Fraudulent Conveyance Award."

approved the Application to Employ John W. Muije & Associates as Special Counsel on a Contingent Fee Basis Under 11 U.S.C. §327(a) [ECF 28] as Exhibit "A" states:

> 13. The Muije Firm agrees to turnover to the Trustee fifty percent (50%) of all funds collected or recovered from the Defendants attributable on any claims litigated in the State Court Litigation and fifty percent to Nype (except for the previously awarded discovery sanction awarded in the State Court Litigation which will be paid 100% to Nype).

The Declaration of Shelley D. Krohn Trustee [ECF 30] as Exhibit "C" states:

> 13. I have required that 50% of any funds and assets collected or recovered from the C-Defendants by the Muije Firm in the State Court Litigation (except the previously awarded discovery sanction) will be turned over to me as Trustee.
> ***
> 17. I have been informed that the Muije Firm will continue to represent Nype with respect to all claims other than the recovery of fraudulent transfers, and because of the agreement between the Trustee and Nype, 50% of the recovery and funds collected from the C-Defendants will not belong to the Debtor's estate ("Non-estate Property").

In fact, so far, (a) approximately $440,000 was collected from a defendant, (b) half of the collected funds were delivered to the Trustee, and (c) the Muije Firm was awarded its contingent fee. See the Muije Fee Application and Muije Fee Order attached as Exhibits "A" and "D".

These documents show that the Trustee assigned 50% of the recovery on the fraudulent conveyance claims (which belonged to the LVLP Bankruptcy Estate) to Nype and Nype assigned 50% of the recovery on the conspiracy claims (which belonged to Nype) to the Trustee. All of this was presented to the Nevada Bankruptcy Court and approved by the Court as set

forth in the Muije Employment Order and the Muije Fee Order. This gives Nype standing to bring the objection to dischargeability as the part owner of the Judgment proceeds.

Third, Bankruptcy Code §523(a)(2)(A) provides:

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> ***
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

This statute focuses on the nature of the debt and how the debt arose, not the identity of the claimant. This statute does NOT require that the debt be owed to the party defrauded. It requires the "debt" to be for money obtained by, among other things, "actual fraud". As a 50% assignee of the proceeds of the Judgment, Nype has standing to assert that the Judgment is nondischargeable. The nature of the debt, not the holder of the claim, determines dischargeability. *In re Florida*, 164 B.R. 636, 640 (B.A.P. 9th Cir. 1994)(for purposes of §523(a)(6)). See also, *In re Bryer*, 227 B.R. 201, 203 (Bankr. D. Me. 1998) ("in a dischargeability determination, the focus is properly on the nature of the debt, not the identity of the holder of the restitution claim.").

Assignment of claims by a trustee with bankruptcy court authorization is permitted. See *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 17 (2d Cir.1997) ("In general, claims or choses in action may be freely transferred or assigned to others."); *Cordes & Co. Fin. Servs. v. A.G.*

*Edwards & Sons, Inc.,* 502 F.3d 91, 103 (2d Cir. 2007).[7] In this case, the partial assignment of the fraudulent transfer claim was approved by the Nevada Bankruptcy Court in its order approving John Muije's employment. See Muije Employment Order which provides that Muije's employment is "in accordance with the terms of the agreement set forth in the Motion". As stated by the Trustee in her Trustee Muije Employment Declaration, the LVLP bankruptcy estate had no other assets or funds with which to employ counsel to pursue the fraudulent transfer claims and it agree to split the recovery on the various claims alleged.[8]

Fourth, if this Court rules that the Trustee is a necessary party or the real party in interest for the fraudulent transfer portion for some or all of this adversary proceeding, the Trustee has ratified the prosecution of this Adversary Proceeding and is ready and willing to intervene in this adversary proceeding as a plaintiff. See Declaration of Shelley D. Krohn dated December 14, 2021 herein annexed as Exhibit "K". FRCP Rule 15 allows for Amended and Supplemental Pleadings (which relate back to the date of the original pleading) and FRCP Rule 17(a)(3)[9] provides that this Court may

---

[7] Even an outright sale of a fraudulent conveyance claim is allowed. See, e,g., *Knoll, Inc. v. Zelinsky*, No. 05-CV-1499 (GLS/DRH), 2008 WL 11504632, at *1 (N.D.N.Y. Apr. 8, 2008)

[8] The Trustee Employment Declaration includes:

> 22. According to the schedules filed by the Debtor, the Debtor's bankruptcy estate has no assets. There appear to be no assets other than the claim for recovery of fraudulently transferred assets against the Co-Defendants.

[9] Rule 17 provides:

> (3) *Joinder of the Real Party in Interest.* The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

not dismiss an action for failure to join the real party in interest without giving the real party in interest the opportunity to ratify, join or be substituted. When that occurs, the amended complaint relates back. "Formal joinder or substitution of the real party in interest will not be necessary when the real party ratifies the commencement of the action." Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1555 (3d ed.). "A proper ratification under Rule 17(a) requires that the ratifying party (1) authorize continuation of the action and (2) agree to be bound by its result." *ICON Grp., Inc. v. Mahogany Run Development Corp.,* 829 F.2d 473, 478 (3d Cir.1987); *see also Wieburg v. GTE Southwest, Inc.,* 272 F.3d 302, 307 (5th Cir.2001) (citing *Naghiu v. Inter–Continental Hotels Grp., Inc.,* 165 F.R.D. 413, 421 (D.Del.1996), for same

proposition); *In re Whittington,* 2014 WL 4163589, at *20 (W.D.Tex. Aug. 20, 2014) (same); *Auday v. Wetseal Retail, Inc.,* No. 1:10–CV–260, 2013 WL 2457717, at *7 (E.D.Tenn. June 6, 2013); *In re Ettus*, 596 B.R. 405, 411 (Bankr. S.D. Fla. 2018).

Fifth, Liberman waived the real party in interest defense by failing to raise it. The "real party in interest" defense can be waived when it is not timely asserted. *In re Unger & Assocs., Inc.*, 292 B.R. 545, 552 (Bankr. E.D. Tex. 2003.

## SPECIFICITY OF JUDGMENT

This Court, without deciding, also raised the issue of whether the Judgment had sufficient findings concerning Liberman's actions and

intent.[10] In the Judgment, Judge Gonzalez used the conjunctive "and" when making the factual findings that Liberman participated in the fraudulent transfers and the civil conspiracy. The Judgment includes (emphasis added):

> 13. Mitchell, **Liberman and** the Related Entities engaged in conscious, concerted and ongoing efforts to conceal, hide, convey, keep secret and/or divert millions of dollars in assets away from Nype and/or other creditors.
> 14. Mitchell, **Liberman and** the Related Entities engaged in conscious, concerted and ongoing efforts to ensure that funds and/or assets that would otherwise be available to Nype to satisfy his claims (and Judgment) were kept away from Nype.
> 15. Mitchell, **Liberman and** the Related Entities distributed in excess of $15,000,000 in funds to Mitchell and Liberman that should have been available to satisfy Nype's claims/Judgment.
> \*\*\*
> 21. At all relevant times, Mitchell **and Liberman** caused each of the Related Entities to use the same financial and accounting records, which are not distinguishable by entity. Each of the Related Entities' financial and accounting records are not distinguishable by entity.
> \*\*\*
> 27. As a result of Mitchell **and Liberman's** domination, influence and control over the Related Entities, the individuality and separateness of the Related Entities -vis-a-vis themselves and Mitchell **and Liberman**- was and remains nonexistent as evidenced by the commingling of funds, transactions, revenues, expenses, assets, liabilities and contributed capital.
> 28. The manner in which Mitchell **and Liberman** operated the Related Entities makes it virtually impossible to identify transactions by purpose and/or entity.
> 29. The evidence demonstrates that: (a) Mitchell, **Liberman and** the Related Entities commingled funds, transactions and assets; (b) the Related Entities were and are undercapitalized; (c) Mitchell,

---

[10] The Memorandum includes: "the Court has concerns with the Nevada Judgment's failure to make any specific findings as to the Debtor's individual actions and the Debtor's individual intent to defraud…"

> **Liberman and** the Related Entities distributed funds to Mitchell **and Liberman** as individuals without regard to parent entities; (d) Mitchell, **Liberman and** the Related Entities treated assets of the other entities as their own; and (e) the Related Entities failed to observe corporate or LLC formalities.
>
> \*\*\*
>
> 31. Mitchell, **Liberman and** the Related Entities have made distributions to avoid satisfying Nype's claims and Judgment.
>
>> i. When Leah Property sold certain real property to Casino Coolidge on or about December 17, 2014 and did not transfer the funds to LVLP.
>> ii. When Mitchell **and Liberman** took personal distributions from the Related Entities, between 2007 and 2016, totaling $15,148,339.
>
> \*\*\*
>
> 44. The District Court concluded Nype had proven by a preponderance of the evidence that he suffered damages in the amount of $341,934.47 as a result of the fraudulent transfer of the proceeds of the Leah transaction with Casino Coolidge directly to **Liberman and** Mitchell, rather than to Leah's parent LVLP.
>
> 45. The District Court concluded Nype has proven by a preponderance of the evidence that he suffered special damages in the form of attorney's fees, costs and expert expenses related to the transfers in the total amount of $4,493,176.90.
>
> \*\*\*
>
> 47. The District Court concluded that:
> a. Mitchell **and Liberman** engaged in conscious, concerted and ongoing efforts to conceal, hide, convey, keep secret and/or distribute millions of dollars in assets away from Nype;
> b. Mitchell **and Liberman** received distributions from LVLP and the Related entities;

These findings and conclusions are legally sufficient to require the granting of summary judgment **against Liberman** for two reasons:

1.  The Judgment is clear that Liberman, as well as Mitchell, was a **participant** in the fraudulent conveyance scheme[11]; and

2.  Liberman's actual participation in the mechanics of a fraudulent conveyance scheme isn't required to deny dischargeability when Liberman has vicarious liability and knew or should have known of the fraud and benefitted from the fraud.

Under § 523(a)(2)(A), the disqualifying act does not have to be committed *by the debtor. In re Placeres*, 578 B.R. 505, 517 (Bankr. S.D.N.Y. 2017). "[A] debt may be excepted from discharge when the debtor personally commits actual, positive fraud, and also when such actual fraud is imputed under ... [vicarious liability] principles." *Hoffend v. Villa (In re Villa),* 261 F.3d 1148, 1151 (11th Cir.2001), *cert. denied,* 535 U.S. 1112, 122 S.Ct. 2328, 153 L.Ed.2d 159 (2002). The nondischargeability of a fraud-related debt should be found if the principal-debtor participated in the benefits and possessed some separate culpability, even absent actual participation. *La Trattoria, Inc. v. Lansford (In re Lansford),* 822 F.2d 902 (9th Cir.1987) (Code § 523(a)(2)(B)); *In re Verdon*, 95 B.R. 877, 883 (Bankr. N.D.N.Y. 1989).

---

[11] The Judgment specifically states:

> 13.  Mitchell, **Liberman and** the Related Entities engaged in conscious, concerted and ongoing efforts to conceal, hide, convey, keep secret and/ordivert millions of dollars in assets away from Nype and/or other creditors.
> 14.  Mitchell, **Liberman and** the Related Entities engaged in conscious, concerted and ongoing efforts to ensure that funds and/or assets that would otherwise be available to Nype to satisfy his claims (and Judgment) were kept away from Nype.

Whether Mitchell made the transfers to Mitchell and Liberman or Liberman, himself, made the transfers is not relevant. The two acted together. As explained by Judge Craig in *In re Jemal*, 516 B.R. 238, 252–53 (Bankr. E.D.N.Y. 2014):

> However, in the Second Circuit, where a debtor's right to a discharge is challenged, the fraudulent intent of an agent of the debtor will be imputed to the debtor only when the debtor either knew of or recklessly disregarded the agent's fraud. *In re Lovich,* 117 F.2d 612 (2d Cir.1941), involved a challenge to the discharge of two debtors engaged in business as partners, under § 32(c)(3) of the Bankruptcy Act, which denied discharge to a "bankrupt who has 'obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition.' " *Id.* at 614. The manager of the debtors' business, who was "the husband of one partner and brother of the other," acting within his authority as agent, provided a false financial statement to Dun & Bradstreet, which was relied on by a creditor in extending credit to the business. *Id.* at 613. The Second Circuit held that "[o]n principle we think that more should be shown to justify withholding a discharge that [sic] an agent made a fraudulent statement within the scope of a general authority to transact the bankrupt's business." *Id.* at 615. The court concluded that, for this reason, when a debtor's discharge is challenged based upon a false statement by an agent, "some additional facts must exist justifying an inference that the bankrupt knew of the statement and in some way acquiesced in it or failed to investigate its accuracy." *Id.* At least one court has found that reckless disregard of an agent's fraud may justify its imputation to the principal in an action to deny dischargeability. See *In re Salzman,* 61 B.R. 878, 890 (Bankr.S.D.N.Y.1986) ("When a principal of a corporation signs false documents without examining them and either knows or should have known of the fraud, the requisite intent to defraud may be inferred from such reckless disregard of the accuracy of the facts, because had the principal paid minimal attention, he would have been alerted to

the fraud.").

> *In re Jemal*, 516 B.R. 238, 252–53 (Bankr. E.D.N.Y. 2014)(internal footnote omitted).

As explained by Judge Eisenberg in *In re Zaffron*, 303 B.R. 563, 571 (Bankr. E.D.N.Y. 2004):

> Even if the Court accepted the Debtor's representations that the Debtor did not participate in making the false statements, the law permits the actions of Mirjani to be attributed to the Debtor as his agent:
> > 'Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' *Pan American World Airways v. Shulman Transport Enterprises, Inc. (In re Shulman Transport Enterprises, Inc.),* 744 F.2d 293, 295 (2d Cir.1984) (quoting *Restatement (Second) of Agency § 1(1) (1958))....* [U]nder general agency theory, a principal is bound by the acts of his or her agent if the principal consents to the act in advance or ratifies it after the fact. *See* Am.Jur.2d, Agency § 270 (1986).
>
> *Pisano v. Verdon (In re Verdon),* 95 B.R. 877, 882–83 [(Bankr. NDNY 1989)](other citations omitted).

Here, the Judgment states that Mitchell and Liberman acted jointly in managing the assets of LVLP and its subsidiaries, jointly benefitted from the fraudulent transfers of assets and jointly intended to prevent Nype from collecting on his judgment. Even if all the checks were written by Mitchell, Liberman had to know that these transactions over many years were occurring. The Judgment states that the litigation between Nype, on the one hand, and LVLP, on the other, began in 2007. The Judgment states that "Between 2007 and 2016 [9 years], Mitchell <u>and Liberman</u> distributed to

themselves a total of $15,148,389 from the Related Entities" (subsidiaries or alter egos of LVLP)(emphasis added).

Even if Liberman swears he was not conscious of these actions during the 9 year fraudulent conveyance scheme, this Court should find the debt nondischargeable. The United States Supreme Court has held that if one party's "version of events is so utterly discredited by the record that no reasonable jury could have believed him", summary judgment is appropriate. *Scott v. Harris*, 550 US 372, 380 (2007). "A denial of knowledge may be so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it; and if so, there is no occasion to submit the issue of knowledge to determination at a trial." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998); *see also In re Eigsti*, 323 B.R. 778, 785 (Bankr. M.D. Fla. 2005) ("Summary judgment is appropriate in cases in which fraudulent intent is proven by a pattern of concealment or reckless indifference to the truth."). Furthermore, "[f]raudulent intent may be determined by circumstantial evidence." *In re Aubrey*, 111 B.R. 268, 274 (B.A.P. 9th Cir. 1990). "Notwithstanding, summary judgment may be appropriate when determining issues of a debtor's subjective intent to defraud under § 523(a)(2)(A) where the record of the case leaves no plausible honest explanation for the debtor's action." *PNC Bank v. Laskey (In re Laskey),* 441 B.R. 853, 856 (Bankr.N.D.Ohio 2010)). Any attempt by Liberman to deny he knew what was going on during the 9 year fraudulent conveyance scheme would be implausible. No further proof is needed that Liberman is responsible for the fraudulent transfers with intent to harm Nype, especially since the Findings expressly ascribed all such wrongful conduct to Liberman (and others).

CONCLUSION

In the prior Motion and in this reconsideration motion, Nype has proven with indisputable evidence that Liberman's actions as a participant (active or vicarious) in and beneficiary of a fraudulent conveyance scheme bars the discharge of the Judgment against Liberman.

> Under the Supreme Court's decision in *Husky International*, the term "actual fraud" encompasses fraudulent conveyance schemes, even when those schemes do not involve a false representation. *See Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).

*Miner v Mines (In re Mines)*, Case No. 8-19-70078, page 11 (June 3, 2021).

*Husky International* involved a fraudulent conveyance scheme which is quite similar to the fraudulent conveyance scheme conducted by Liberman and his partner. The result should be the same. This Court should grant partial summary judgment as to the Fraudulent Conveyance Award.

Dated: Las Vegas, Nevada
December 15, 2021

*/s/ Lenard E. Schwartzer*
Lenard E. Schwartzer, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas, NV 89146
(702) 228-7590
bkfilings@s-mlaw.com

and

Dated: Uniondale, New York
December 15, 2021

                      */s/ Stuart I. Gordon*
                      Stuart I. Gordon, Esq.
                      Matthew V. Spero, Esq.
                      RIVKIN RADLER LLP
                      926 RXR Plaza
                      Uniondale, New York 11556-0926
                      Telephone: (516) 357-3000
                      Facsimile: (516) 357-3333
                      Stuart.gordon@rivkin.com
                      Matthew.spero@rivkin.com